IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| 2-BAR RANCH LIMITED PARTNERSHIP, a Montana limited partnership; BROKEN CIRCLE RANCH COMPANY, INC., a Montana profit corporation; R BAR N RANCH, LLC, a Montana limited liability corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES FOREST SERVICE, an Agency of the United States Department of Agriculture; SONNY PERDUE, in his official capacity as Secretary of the United States Department of Agriculture; VICTORIA CHRISTIANSEN, in her official capacity as Interim Chief of the Forest Service; LEANNE MARTEN, in her official capacity as Regional Forester for the Northern Region; MELANY GLOSSA, in her official capacity as Forest Supervisor for the Beaverhead-Deerlodge National Forest, State of Montana; CAMERON RASOR, in his official capacity as District Ranger for the Pintler Ranger District in the Beaverhead-Deerlodge National Forest, <br><br> Defendants. | No. CV 18-33-BU-SEH <br><br> MEMORANDUM & ORDER |

Before the Court is Plaintiffs 2-Bar Ranch Limited Partnership ("2-Bar"), Broken Circle Ranch Company, Inc. ("Broken Circle Ranch"), and R Bar N Ranch, LLC's ("R Bar N Ranch") (collectively "Plaintiffs") Motion for Preliminary Injunction by which they seek to enjoin the United States Forest Service ("Forest Service") from enforcing certain livestock grazing management standards against Plaintiffs' grazing operations on a grazing allotment within the Beaverhead-Deerlodge National Forest.[1] A hearing on the motion was held on October 10, 2018. For reasons stated below, the motion is denied.

## Background

The Federal Land Policy and Management Act of 1976 ("FLPMA")[2] authorizes livestock grazing on specified allotments within the National Forest System.[3] The Forest Service administers the System's range resources under FLPMA and the National Forest Management Act ("NFMA")[4] through the development of forest-wide management objectives to achieve certain desired

---

[1] *See* Doc. 17 at 2–3.

[2] 43 U.S.C. §§ 1701–87 (2018).

[3] *See Oregon Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 980 (9th Cir. 2006) [hereinafter *ONDA*].

[4] 16 U.S.C. §§ 1600–14 (2018).

conditions.[5]

Individual livestock grazing operations on allotments are managed by site-specific: (1) grazing permits; (2) allotment management plans; and (3) annual operating instructions.[6] Site-specific documents developed by the Forest Service incorporate, among other objectives, grazing management standards designed to reduce the impact of livestock grazing on other forest resources.[7]

Plaintiffs graze cattle on the Dry Cottonwood Allotment, located west of the Continental Divide in the Beaverhead–Deerlodge National Forest, under ten-year term grazing permits.[8] Throughout the 2015 and 2016 grazing seasons, the Dry Cottonwood Allotment was inspected using Forest Service-developed grazing management standards,[9] which included allowable use levels ("AULs") that specified the allowable levels of stream bank disturbance, riparian stubble height, and utilization of differing forage species in particular ranges.[10] The AULs were

---

[5] *See* 36 C.F.R. § 222.1(a) (2018); *see* Doc. 47-6 at 9. *See also Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1076 (9th Cir. 2010).

[6] *See ONDA*, 465 F.3d at 979 (citations omitted).

[7] *See* Doc. 47-6 at 33–34.

[8] *See* Docs. 34-8 at 2, 36-9 at 2, and 39-11 at 2. The Forest Service terminated Broken Circle Ranch's grazing permit in August 2018. *See* Doc. 37-22 at 1–2.

[9] *See* Docs. 42-19, 42-21 at 1, and 42-22.

[10] *See* Docs. 42-21 at 1 and 34-12 at 2.

documented in the Administrative Record as "Riparian Mitigation Measures Deerlodge National Forest March 12, 1997" ("1997 AULs"),[11] and were incorporated into Plaintiffs' grazing permits.[12]

In November 2016, the Forest Service sent Plaintiffs a Notice of Noncompliance detailing violations of several grazing management standards, including exceeding the 1997 AULs.[13] A second Notice of Noncompliance was sent in November 2017, describing continued violations of the 1997 AULs.[14] Twenty percent of Plaintiffs' term grazing privileges for the 2018 and 2019 grazing seasons on the Dry Cottonwood Allotment were suspended after the second Notice of Noncompliance was sent.[15]

Plaintiffs appealed the twenty-percent suspension, arguing in part that the 1997 AULs did not apply to the Dry Cottonwood Allotment, but that rather the 2009 Beaver-Deerlodge National Forest Land and Resource Management Plan's

---

[11] Riparian Mitigation Measures Deerlodge National Forest March 12, 1997. Doc. 48-1 at 1–4.

[12] *See* Docs. 34-8 at 6–9 and 39-11 at 6–9. Broken Circle Ranch's 2014 grazing permit incorporates a differently-formatted document entitled "Interim Riparian Mitigation Measures Deerlodge National Forest March 12, 1997" that provides for identical AULs. *See* Doc. 36-9 at 7–10.

[13] *See* Doc. 34-12 at 2.

[14] *See* Doc. 34-17 at 1–2.

[15] *See* Doc. 34-18 at 1-2.

Interim Livestock Grazing Standards ("2009 Interim Standards")[16] provided the applicable AULs.[17]

On April 18, 2018, the Forest Supervisor issued a final administrative decision ("April 18, 2018 Decision") reversing the suspension and reinstating Plaintiffs' full grazing privileges.[18] However, the April 18, 2018 Decision disagreed with Plaintiffs' assertion that the 2009 Interim Standards applied to the Dry Cottonwood Allotment.[19] It found instead that separate AULs applied,[20] documented in the Administrative Record as "Interim Riparian Mitigation Measures Deerlodge National Forest September 14, 1995" ("1995 AULs").[21] Permit modifications incorporating and consistent with the 1995 AULs and removing the 1997 AULs were drafted later and included in the 2018 Annual

---

[16] Doc. 47-6 at 34.

[17] *See* Docs. 45-3 at 29–37, 45-4 at 29–37, and 45-5 at 29–37.

[18] *See* Doc. 46-10 at 4.

[19] *See* Doc. 46-10 at 2.

[20] *See* Doc. 46-10 at 2 ("I find the 1996 DN clearly selected the AULS described in Appendix A of the EA.").

[21] Appendix A Interim Riparian Mitigation Measures Deerlodge National Forest September 14, 1995, Environmental Assessment Dry Cottonwood Allotment Grazing Permit Issuance Deerlodge National Forest Deer Lodge Ranger District November 1995. Doc. 47-9 at 1, 39–41.

Operating Instructions.[22]

On May 31, 2018, Plaintiffs filed suit under the Administrative Procedure Act in this Court seeking judicial review of the April 18, 2018 Decision.[23] They claim the Forest Service's application of the 1995 AULs to the Dry Cottonwood Allotment, rather than the 2009 Interim Standards, was arbitrary and capricious and in violation of NFMA, FLPMA, and the National Environmental Policy Act.[24] A preliminarily injunction enjoining the Forest Service from enforcing the 1995 AULs until the Court issues a final decision on the merits was sought.[25]

## Analysis

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"[26] A plaintiff seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent

---

[22] *See* Docs. 34-25 at 1, 40-11 at 1, 34-27 at 3, and 40-12 at 3.

[23] *See* Doc. 1 at 1–7.

[24] *See* Doc. 1 at 1–7.

[25] *See* Doc. 17 at 2–3.

[26] *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)) (emphasis omitted). *See also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").

preliminary relief; (3) the balance of the equities tips in its favor; and (4) an injunction is in the public interest.[27]

A preliminary injunction may not be granted unless a plaintiff demonstrates that "irreparable harm is *likely*, not just possible,"[28] to occur "'*before* a decision on the merits can be rendered.'"[29] "[S]peculative injury does not constitute irreparable injury,"[30] and the "possibility of some remote future injury" cannot support the issuance of a preliminary injunction.[31]

Plaintiffs have asserted two separate claims of irreparable harm. First, they claim that they "cannot be adequately compensated for the time and energy expended trying to comply with the [1995 AULs],"[32] and "[e]ven if monetary damages could compensate Plaintiffs for their harm, the Forest Service is likely

---

[27] *See Winter*, 555 U.S. at 20 (citations omitted).

[28] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter*, 555 U.S. at 22).

[29] *Winter*, 555 U.S. at 22 (quoting 11A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1, p. 139 (2d ed.1995)) (emphasis added).

[30] *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 849 (9th Cir. 1985) (citing *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984)). *See also* 13 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 65.22[1][b], p. 65-50 (3d ed. 2018) ("Alleged harm that is remote or speculative will not be considered irreparable; rather, the movant must demonstrate that the threatened harm is imminent.").

[31] *Winter*, 555 U.S. at 22 (quoting 11A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1, p. 155–56 (2d ed.1995)).

[32] Doc. 23 at 17.

immune from paying."[33]

The bare assertion that the Forest Service is "likely immune from paying" monetary damages fails to establish that the purported harm is *irreparable*. "'The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'"[34] Plaintiffs may have viable causes of action for monetary recovery not yet asserted if the federal government waived sovereign immunity from suit under the Federal Tort Claims Act,[35] the Tucker Act,[36] or the Little Tucker Act.[37]

More significant to the claim of irreparable injury is the undisputed reality that Plaintiffs are not now conducting grazing operations on the Dry Cottonwood Allotment.[38] The 2018 grazing season closed on September 30, 2018.[39] The 2019

---

[33] Doc. 23 at 17 (citing *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1251 (9th Cir. 2001) (finding a possibility that plaintiffs would be barred from seeking compensation due to state defendant's sovereign immunity under the Eleventh Amendment).

[34] *Conkright v. Frommert*, 556 U.S. 1401, 1403 (2009) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

[35] 28 U.S.C. §§ 1346, 2671–80 (2018).

[36] 28 U.S.C. § 1491(a)(1) (2018).

[37] 28 U.S.C. § 1346(a)(2) (2018).

[38] *See* Docs. 34-8 at 1, 39-11 at 1, and 49 at 8.

[39] *See* Docs. 34-8 at 1, 39-11 at 1, and 49 at 8.

season is not scheduled to commence until June 16, 2019.[40]

This case is reasonably on schedule to be fully submitted for merit decision on February 20, 2019,[41] well in advance of Plaintiffs' new grazing season. The Court fully expects to issue a final decision on the merits of Plaintiffs' claims before Plaintiffs will be obliged to expend further time or energy complying with the Forest Service's AULs. A preliminary injunction is unnecessary to prevent Plaintiffs' first claim of irreparable harm.

Plaintiffs second claim of irreparable harm is that absent a preliminary injunction, the Forest Service will inevitably find Plaintiffs in violation of the 1995 AULs, issue a third Notice of Noncompliance for the 2018 grazing season, and suspend or cancel Plaintiffs' grazing privileges on the Dry Cottonwood Allotment.[42] They argue that such a suspension of their grazing privileges would leave Plaintiffs "without adequate feed for their livestock and forc[e] them to take steps that adversely affect their private lands, livestock, and budget."[43]

The possibility of future injuries that Plaintiffs anticipate are too speculative

---

[40] *See* Docs. 34-8 at 1, 39-11 at 1, and 49 at 8.

[41] *See* Doc. 28 at 2.

[42] *See* Doc. 23 at 17.

[43] Doc. 23 at 17–18.

to qualify as proof of irreparable harm.[44] No Notice of Noncompliance for the 2018 grazing season has been issued.[45] No suspension of any of Plaintiffs' grazing privileges has occurred.[46] Even if the Forest Service were to take such action in the future, Plaintiffs have not shown how that action would adversely affect Plaintiffs' grazing operations on the Dry Cottonwood Allotment *before* a final decision is made on the merits.

Plaintiffs' failure to carry the burden of showing a likelihood of irreparable harm absent injunctive relief is dispositive of Plaintiffs' motion.[47]

ORDERED:

Plaintiffs' Motion for Preliminary Injunction[48] is DENIED.

DATED this 26th day of October, 2018.

SAM E. HADDON
United States District Judge

---

[44] *See Colo. River Indian Tribes*, 776 F.2d at 849.

[45] *See* Doc. 49 at 39–40.

[46] *See* Doc. 49 at 39–40.

[47] *See* 13 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 65.22[1][a], p. 65-45 (3d ed. 2018) ("[A] district court is not required to make specific findings on all four factors in deciding a motion for a preliminary injunction if fewer factors are dispositive of the issue.").

[48] Doc. 17.